UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

DULCICH, INC. dba PACIFIC SEAFOOD
GROUP; DULCICH, INC.; FRANK
DULCICH; PACIFIC SEAFOOD
WASHINGTON ACQUISITION CO., INC.;
BANDON PACIFIC, INC.; BIO-OREGON
PROTEIN, INC.; PACIFIC CHOICE
SEAFOOD COMPANY; PACIFIC COAST
SEAFOODS COMPANY; PACIFIC
GARIBALDI, INC.; PACIFIC GOLD
SEAFOOD COMPANY; PACIFIC PRIDE
SEA FOOD COMPANY; PACIFIC SEA
FOOD CO.; PACIFIC SURIMI CO., INC.;
PACIFIC TUNA COMPANY, LLC;
WASHINGTON CRAB PRODUCERS, INC.;
PACIFIC ALASKA SHELLFISH, INC.; SEA
LEVEL SEAFOODS, LLC; ISLAND FISH
CO., LLC; PACIFIC RESURRECTION BAY;
PACIFIC CONQUEST, INC.; CALAMARI,
LLC; JO MARIE, LLC; LESLIE LEE LLC;
MISS PACIFIC, LLC; PACIFIC FUTURE
LLC; PACIFIC GRUMPY J, LLC; PACIFIC
HOOKER, LLC; PACIFIC HORIZON, LLC;
PACIFIC KNIGHT, LLC; PRIVATEER, LLC;
SEA PRINCESS LLC; TRIPLE STAR, LLC;
PACIFIC FISHING LLC; PACIFIC SEA
FOOD OF ARIZONA, INC.; STARFISH
INVESTMENTS, INC.; DULCICH SURIMI,
LLC; BIO-OREGON PROPERTIES, LLC;
PAFICIC GROUP TRANSPORT CO.;
PACIFIC MARKETING GROUP, INC.;
PACIFIC RUSSIA, INC.; PACIFIC RUSSIA
VENTURES, LLC; PACIFIC TUNA
HOLDING COMPANY, INC; POWELL
STREET MARKET LLC; PACIFIC FRESH
SEA FOOD COMPANY; SEACLIFF

Case No. 3:13-cv-00003 -ST

FINDINGS AND
RECOMMENDATIONS

1 – FINDINGS AND RECOMMENDATIONS

SEAFOODS, INC.; COPPER RIVER
RESOURCE HOLDING CO., INC.; PACIFIC
COPPER RIVER ACQUISITION CO., INC.;
SEA LEVEL SEAFOODS ACQUISITION,
INC.; ISLAND COHO, LLC; S&S SEAFOOD
CO., INC.; PACIFIC SEAFOOD DISC., INC.;
DULCICH REALTY, LLC; DULCICH
REALTY ACQUISITION, LLC; and
DULCICH JET, LLC,

        Plaintiffs,

   v.

MAYER BROWN, LLP,

        Defendant.

STEWART, Magistrate Judge:

## INTRODUCTION

This case involves a $5 million attorney fee brawl currently being litigated both in the District of Columbia and in Oregon. The 54 plaintiffs are (1) Dulcich, Inc. dba Pacific Seafood Group ("PSG"), an Oregon corporation, (2) PSG's sole owner, Frank Dulcich ("Dulcich"), a resident of the state of Washington,[1] and (3) 52 corporate entities related to Pacific which are either corporations or limited liability companies of the states of Washington, Oregon, California, Delaware and Nevada.

All plaintiffs were represented in an antitrust case by defendant Mayer Brown, LLP ("Mayer Brown"), an international law firm operating as an Illinois limited liability partnership out of its office in Washington, DC. Mayer Brown's partners live and work in several locations,

---

[1] "It is black letter law that, for purposes of diversity, '[r]esidence and citizenship are not the same thing.'" *Seven Resorts, Inc. v. Cantlen*, 57 F3d 771, 774 (9th Cir 1995), citing *Mantin v. Broadcast Music, Inc.*, 244 F2d 204, 206 (9th Cir 1957). Dulcich's citizenship is not alleged in the pleadings. Second Amended Complaint, ¶ 2. This court assumes for present purposes that he is also a citizen of Washington. However, due to a procedural defect in the removal of this case, this court need not and does not decide whether the exercise of diversity jurisdiction is appropriate. Because the case was untimely removed from state court, it should be remanded.

2 – FINDINGS AND RECOMMENDATIONS

including Washington, DC, and the states of New York, Illinois, California, Texas, and North Carolina.  In addition, two Mayer Brown partners are United States citizens who reside outside of the United States.  Bomchill Decl., ¶ 3.

Plaintiffs initially filed this case in Clackamas County Circuit Court for the State of Oregon as Case No. CV12020221.  Mayer Brown then filed a Notice of Removal to this court (docket # 1).  Plaintiffs have now filed a Motion to Remand (docket #4), and defendant has filed a Motion to Change or Transfer Venue (docket #6) and a Motion to Dismiss for Lack of Subject Matter Jurisdiction (docket #22).  For the reasons that follow, this case should be remanded to state court, and all other pending motions in this case should be stricken as moot.

## FACTUAL BACKGROUND

On June 22, 2010, Lloyd D. Whaley and Todd L. Whaley filed in this court a class action complaint under the Sherman Act against all the plaintiffs in this case, alleging that they had engaged in anticompetitive strategies to achieve and maintain a monopoly over four West Coast seafood markets, namely those of Dungeness crab, groundfish, Pacific whiting processed onshore, and Pacific coldwater shrimp.  *Whaley, et. al. v. Pacific Seafood Group, et al.*, Civil No. 1:10-cv-03057-PA.[2]  A few months later, on September 10, 2010, PSG's general counsel executed, on behalf of PSG, an engagement letter with Mayer Brown.  Notice of Removal, (docket #1-2, pp. 12-14).  No other individual or representative of any of the related entities signed this engagement letter.  *Id*, p. 14.  In that letter, Mayer Brown agreed to:

> provide [PSG] and its related companies with antitrust advice and
> to defend them in connection with all civil antitrust litigation filed
> against them alleging antitrust violations in the seafood industry, as
> well as represent PSG in a separate antitrust investigation being

---

[2] Initially, Dulcich Realty, LLC, Dulcich Realty Acquisition, LLC, and Dulcich Jet, LLC were not named as defendants in the *Whaley* litigation.  However, by the time the Third Amended Complaint was filed, those three entities were also named defendants (docket #286).

3 – FINDINGS AND RECOMMENDATIONS

>conducted by the Oregon Attorney General also concerning the seafood industry.

Following execution of the engagement letter, Mayer Brown undertook defense of PSG and the related entities. Ultimately, however, the parties' relationship soured and, on February 7, 2012, plaintiffs filed this case in Clackamas County Circuit Court for the State of Oregon, seeking declaratory relief that the fees charged by Mayer Brown were excessive. The initial complaint was not served on Mayer Brown. Plaintiffs filed a First Amended Complaint on or about June 20, 2012. Notice of Removal, ¶ 2.

This case is essentially the mirror image of a breach of contract case filed by Mayer Brown against PSG in the District of Columbia Superior Court. Mayer Brown first became aware of the Oregon lawsuit when it received a copy of the First Amended Complaint and summons on June 22, 2012. *Id*. Within a month, on July 18, 2012, Mayer Brown filed a complaint in the Superior Court in the District of Columbia, alleging breach of contract. *Mayer Brown LLP v. Dulcich, Inc. d/b/a Pacific Seafood Group*, Superior Court of the District of Columbia, Civil No. 0005830-12. The Washington, DC, case named only PSG as a defendant, and PSG removed that case to the United States District Court for the District of Columbia. *Mayer Brown LLP v. Dulcich, Inc. d/b/a/ Pacific Seafood Group*, United States District Court for the District of Columbia, Civil No. 12-1318 (RWR).

At all relevant times, Mayer Brown knew that neither Dulcich nor any of the 52 related entities named as plaintiffs in this case were parties to its written agreement with PSG. Mayer Brown also knew, based upon the Answer filed in the *Whaley* litigation, that at least one of the related entities was incorporated in the state of California where several of Mayer Brown's partners reside. Notice of Removal, ¶ 3.

4 – FINDINGS AND RECOMMENDATIONS

Based on the fact that they were not parties to the contract (engagement letter) at issue, Mayer Brown filed a motion in Clackamas County Circuit Court seeking dismissal of the claims by Dulcich and the 52 related entities ("extraneous plaintiffs") on the ground that they were not real parties in interest and that PSG had failed to state a claim. In particular, Mayer Brown argued that the related entities were joined as plaintiffs in the Oregon state court case only as a strategic move to defeat diversity jurisdiction. Supplemental Colton Decl., Ex. 1, p. 7 (Transcript of Proceedings in Clackamas County State Court November 26, 2012, pp. 14-15).

On December 19, 2012, Clackamas Circuit Court Judge James Redman issued an Order granting Mayer Brown's motion and dismissing the claims of all plaintiffs other than PSG. Notice of Removal, ¶ 4. Judge Redman's Order granted PSG leave to replead to make the claims of the extraneous plaintiffs (*i.e.* those plaintiffs other than PSG) more definite and certain. Mayer Brown did not await the filing of a Second Amended Complaint, but instead filed a Notice of Removal to this court on January 2, 2013, alleging jurisdiction premised upon diversity of citizenship under 28 USC § 1332. *Id*, ¶ 5.

A week later, plaintiffs filed a Motion to Remand (docket #4) and a Second Amended Complaint (docket #3) which realleges their claim for declaratory relief and adds a claim for professional negligence against Mayer Brown. Mayer Brown subsequently filed a Motion to Change or Transfer Venue (docket #6), urging this court to transfer this case to the United States District Court for the District of Columbia pursuant to 28 USC § 1404(a) on the ground that PSG had manipulated the court system by filing first in Oregon, all the while leading Mayer Brown to believe that PSG was interested in mediating their dispute, and because the relevant factors strongly favor transfer. Additionally, Mayer Brown filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction (docket #22) all claims by the extraneous plaintiffs (Dulcich and the

5 – FINDINGS AND RECOMMENDATIONS

52 related entities) on the ground that neither Mayer Brown nor the consultants (Cornerstone Research Inc. and Stroz Friedberg) hired to assist with the defense of the antitrust case presently seek payment from any entity other than PSG.

On March 4, 2013, the Washington DC case was remanded from the United States District Court for the District of Columbia back to the Superior Court for the District of Columbia on the basis that diversity jurisdiction was lacking because Mayer Brown includes at least one "stateless" partner. *Mayer Brown LLP v. Dulcich, Inc. dba Pacific Seafood Group*, United States District Court for the District of Columbia, Civil No. 12-1318 (RWR), Memorandum Opinion and Order (docket #30).

## FINDINGS

### I. Statement of the Issue

The record in this case reveals a variety of labyrinthine legal issues. The briefs are awash in detailed arguments about fraudulent joinder, fraudulent misjoinder, various impediments (or the lack thereof) to the exercise of federal jurisdiction, and accusations of forum shopping. This court has considered the record, the parties' detailed submissions, the arguments made at the hearing, the legal sources cited by the parties, and a variety of other legal sources. Ultimately, the decision rests on a single question, namely whether a notice of removal filed more than 30 days after service of a state court complaint – but within 30 days of a state court order dismissing all non-diverse plaintiffs – is timely under 28 USC § 1446(b) when, at the time of service, the defendant possessed all facts necessary to argue that diversity jurisdiction existed because all non-diverse plaintiffs are not real parties in interest. This court concludes that the notice of removal is not timely, that Mayer Brown removed this case outside of the statutorily-allowed 30-

day window, and, therefore, that this Court has no authority to exercise jurisdiction over the claims alleged in this case. Accordingly, this case should be remanded to state court.

## II. Legal Standards

When a case is filed first in state court, a non-diverse defendant has an opportunity to remove it to federal court. Upon service, a non-citizen defendant must decide whether its best strategic move is to seek removal to federal court. However, federal courts are courts of limited jurisdiction which is carefully circumscribed. *Kokkonen v. Guardian Life Ins. Co. v. Am.*, 511 US 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."). In that vein, "[r]emoval statutes are to be 'strictly construed' against removal jurisdiction." *Nevada v. Bank of Am. Corp.*, 672 F3d 661, 667 (9th Cir 2012), quoting *Syngenta Crop Prot., Inc. v. Henson*, 537 US 28, 32 (2002).

In light of these principles, the defendant faces a daunting presumption against jurisdiction. "[R]emoval jurisdiction ousts state-court jurisdiction and 'must be rejected if there is any doubt as to the right of removal in the first instance.' This gives rise to a 'strong presumption against removal jurisdiction which means that the defendant always has the burden of establishing that removal is proper.'" *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F3d 1102, 1107 (9th Cir 2010), quoting *Gaus v. Miles, Inc.*, 980 F2d 564, 567 (9th Cir 1992) (internal quotation marks, brackets, and citation omitted); *see also Washington v. Chimei Innolux Corp.*, 659 F3d 842, 847 (9th Cir 2011) ("The burden of establishing removal jurisdiction . . . lies with the defendant seeking removal.").

Where, as here, jurisdiction is premised upon diversity of citizenship, the defendant must both establish the substantive requirements of 28 USC § 1332 and comply with the procedural

requirements of the relevant removal statute.  Under § 1332(a), district courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and is between diverse parties, as defined by subsections (a)(1)-(4).  "Although the statute does not so require explicitly, the Supreme Court has repeatedly held, and recently reiterated, that § 1332(a) requires complete diversity, whereby '[i]n a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original jurisdiction over the entire action.'"  *Abrego Abrego v. The Dow Chem. Co.*, 443 F3d 676, 679 (2006), quoting *Exxon Mobile Corp. v. Allapattah Servs., Inc.*, 545 US 546, 553 (2005) (remaining citations omitted).

An equally longstanding line of Supreme Court authority holds that federal courts are not deprived of jurisdiction by the joinder or non-joinder of parties with no interest in the controversy.  "This Court will not suffer its jurisdiction to be ousted by the joinder or non-joinder of formal parties; but will rather proceed without them . . . ."  *Wormley v. Wormley*, 21 US 421, 422 (1823); *Lumbermen's Mut. Cas. Co. v. Elbert*, 348 US 48, 49-50 (1954) (finding no diversity jurisdiction under Louisiana direct action statute because insurer, not insured, was real party in interest); *see also Roth v. Davis*, 231 F2d 681, 683 (9th Cir 1956) ("In determining . . . diversity of citizenship . . . a court looks to the citizenship of the real parties in interest; and where there is complete diversity between them, the presence of a nominal party with no real interest in the controversy will be disregarded.  Jurisdiction is not ousted by the joinder or non-joinder of mere formal parties.") (internal quote marks and citations omitted).  Thus, a "federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy."  *Navarro Sav. Ass'n v. Lee*, 446 US 458, 461 (1980); *see also*

*Bates v. Mortgage Elect. Registration Sys., Inc.*, 694 F3d 1076, 1080 (9th Cir 2012) (citing *Navarro*).

The removal statute on which Mayer Brown relies, 28 USC § 1446(b), in relevant part provides:

> (1) The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . .
>
>    \*   \*   \*
>
> (3) . . . if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

A federal court is not permitted to play fast and loose with the procedural requirements of the removal statutes. Instead, the "limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." *Owen Equip. & Erection Co. v. Kroger*, 437 US 365, 374 (1978). The nature of federal courts' limited jurisdiction directs that "[t]he removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand. The presumption against removal means that 'the defendant always has the burden of establishing that removal is proper.'" *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F3d 1241, 1244 (9th Cir 2009), quoting *Gaus*, 980 F2d at 566; *see also Lanza v. Ashcroft*, 389 F3d 917, 930 (9th Cir 2004) ("There is a general presumption against federal court review, and the burden of establishing the contrary rests on the party asserting jurisdiction."). This includes the burden of showing compliance with the procedural requirements for removal. *Riggs v. Plaid Pantries, Inc.*, 233 FSupp2d 1260, 1264 (D Or 2001)

(citation omitted). Thus, "Section 1446(b)'s 'time limit is mandatory [such that] a timely objection to a late petition will defeat removal . . . .'" *Kuxhausen v. BMW Fin. Servs. NA LLC*, ___ F3d ___, 2013 WL 656851 *5 (9th Cir Feb. 25, 2013).

### III.  Timeliness of Removal

Although somewhat lost in the twists and turns of the parties' arguments, the critical issue is whether Mayer Brown's undisputed ability to raise the real party in interest argument when it was served with the Amended Complaint on June 22, 2012, triggered the 30-day time limit in 28 USC § 1446(b)(1). If so, and if § 1446(b)(3) provides no basis for the running of a second removal period, then Mayer Brown filed this case well outside the 30 days allowed for removal.

Mayer Brown argues that it properly awaited the state court order dismissing the claims of all plaintiffs other than PSG before removing this case to this court. Implicit in this argument is the premise that its removal is properly analyzed under § 1446(b)(3) which permits removal "within 30 days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."

Because Mayer Brown has partners in California and two of the plaintiffs (Pacific Fresh Sea Food Company and Seacliff Seafoods, Inc.) are California corporations, Mayer Brown argues that the "case stated by the initial pleading [was] not removable" under § 1446(b)(1), forcing it to await the state court's dismissal order before filing its notice of removal under § 1446(b)(3). Specifically, Mayer Brown contends that because the Amended Complaint included the "extraneous plaintiffs . . . [PSG] precluded the invocation of diversity jurisdiction in this action." Notice of Removal, p. 4. However, as succinctly stated by the Ninth Circuit,

10 – FINDINGS AND RECOMMENDATIONS

"[w]hen the defendant receives enough facts to remove on any basis under section 1441, the case is removable, and section 1446's thirty-day clock starts ticking." *Durham v. Lockheed Martin Corp.*, 445 F3d 1247, 1253 (9th Cir 2006). While it is true that the Amended Complaint included non-diverse plaintiffs, nothing precluded Mayer Brown from removing this case under § 1446(b)(1) at the time it was served based on Mayer Brown's position that the extraneous plaintiffs were not real parties in interest. It is well established that a plaintiff may not preclude a defendant from removing a case to federal court on the basis of diversity jurisdiction by joining parties with no real interest in the litigation. *Salem Trust Co. v. Manufacturers' Fin. Co.*, 264 US 182, 189 (1924) ("Jurisdiction cannot be defeated by joining formal or unnecessary parties.") (internal citations omitted);Wright & Miller, Federal Prac. & Proc. § 3606 (3d ed.), Parties Considered in Determining Diversity (2012)

From the inception of this case in state court and continuing through the hearing on the present motions, Mayer Brown has argued that Dulcich and the 52 related entities ("extraneous plaintiffs") are not real parties in interest. Wray Decl., Ex. 7, pp. 21-22. Indeed, that was the basis of Mayer Brown's motion to dismiss in state court. In opposing plaintiffs' motion to remand and supporting its own motions to transfer venue and dismiss, Mayer Brown recounts again that the extraneous plaintiffs are not real parties in interest because they were not parties to the contract and are named as plaintiffs purely based on the speculation that Mayer Brown might pursue them for PSG's outstanding fees.

This argument is premised exclusively on the fact that only PSG signed the engagement letter and obligated itself to pay attorney fees for defending the *Whaley* litigation. Despite knowing the one crucial fact necessary to make that argument, Mayer Brown chose not to remove this case within 30 days after being served with the Amended Complaint. Instead,

11 – FINDINGS AND RECOMMENDATIONS

Mayer Brown filed a motion to dismiss in state court and awaited the state court order dismissing the claims of the extraneous plaintiffs before seeking removal. By doing so, Mayer Brown ran the risk that plaintiffs might challenge Mayer Brown's notice of removal as untimely.[3]

Mayer Brown seeks shelter under § 1446(b)(3), contending that it could "first ascertain" that this case was removable when the state court dismissed the claims of the extraneous plaintiffs. However, that argument is wholly inconsistent with a multitude of federal cases, including recent Ninth Circuit cases in which federal courts have considered motions to remand objecting to removals on the basis of a lack of diversity jurisdiction where the premise of the notice of removal was that non-diverse plaintiffs are not real parties in interest. Since at least the mid-1800's, a defendant contending that non-diverse plaintiffs are not real parties in interest has been permitted to remove a case to federal court and invoke diversity jurisdiction. *Irvine, for Use of Lumberman's Bank at Warren v. Lowry*, 39 US 293, 294 (US Pa, Jan. Term 1840). More recently, in the mortgage lending crisis context, the Ninth Circuit has considered removal in analogous situations. *See, e.g.*, *Bates*, 694 F3d at 1080 (9th Cir 2012) (denying remand because State of California was not a real party in interest to a claim that MERS was falsely named as a beneficiary in recorded mortgage documents); *Nevada v. Bank of Am. Corp.*, 672 F3d at 668-72 (allowing remand because State of Nevada was real party in interest as plaintiff in *parens patrie* alleging misleading home mortgage modification and foreclosure processes, precluding jurisdiction under the Class Action Fairness Act ("CAFA")). Cases in the same procedural posture have been considered in sister circuits. *See, e.g. LG Display Co., Ltd. v. Madigan*, 665

---

[3] Federal courts are not deprived of subject matter jurisdiction solely because of a failure to comply with the 30-day time limitation in § 1446(b). However, that time limitation is a mandatory procedural requirement that provides a basis to defeat removal. *Kuxhausen*, ___ F3d ___, 2013 WL 656851 at *5. Such arguments must be raised within 30 days of the filing of the notice of removal. 28 USC § 1447(c). At the latest, plaintiffs raised this argument on February 1, 2013, just under the proverbial wire. *See* Plaintiffs' Reply Memorandum in Support of Their Motion to Remand (docket #27), pp. 6-12.

12 – FINDINGS AND RECOMMENDATIONS

F3d 768 (7th Cir 2011) (upholding remand because State of Illinois was real party in interest, precluding CAFA jurisdiction) (citing other CAFA cases).  They have also been considered in other contexts.  *See Dep't of Fair Emp't & Housing v. Lucent Techs., Inc.*, 642 F3d 728, 737-40 (9th Cir 2011) (denying remand because state agency was not a real party to an alleged violation of the California Fair Employment and Housing Act); *Louisiana v. Union Oil Co. of Cal.*, 458 F3d 364 (5th Cir 2006) (allowing remand because state was real party in interest to tort actions arising out of oil and gas exploration activities on public lands owned by the state); *Iowa Pub. Serv. Co. v. Medicine Bow Coal Co.*, 556 F2d 400 (8th Cir 1977) (finding three plaintiffs were real parties in interest and remanding to state court for lack of diversity jurisdiction).

As these cases indicate, the joinder of a non-diverse plaintiff who has no real interest in the litigation presents no impediment to the filing of a notice of removal by the defendant at the outset of the litigation.  Mayer Brown had no need to read the tea leaves to discern that it had a colorable argument that diversity jurisdiction existed when this case was filed, based on the joinder by PSG of non-diverse plaintiffs who were not real parties in interest.  When Mayer Brown was served with the Amended Complaint, it was in no different position than the defendants in these other cases.  Although it determined that two of the extraneous plaintiff entities had citizenship in California in common with several of its partners, it had in hand the engagement letter signed exclusively by PSG.  It needed no other information to file a notice of removal raising its real party in interest argument and thereby preserve its bid for diversity jurisdiction.

This is consistent with the suggestion in Ninth Circuit authority that the first paragraph of § 1446(b) controls when fraudulent joinder is alleged.  "Removal based on allegations of fraudulent joinder . . . should be analyzed under the first paragraph of § 1446(b) because the

removing defendant is effectively arguing that – but for the fraudulent joinder – there would have been complete diversity at the time the complaint was originally filed." *Selman v. Pfizer, Inc.*, 2011 WL 6655354 at *4 (D Or Dec. 16, 2011), citing *Ritchey v. Upjohn Drug Co.*, 139 F3d 1313, 1318 (9th Cir), *cert denied*, 525 US 963 (1998); *see also Delaney v. Viking Freight, Inc.*, 41 F Supp2d 672, 674 n2 (ED Tex 1999) (citing cases enforcing 30-day removal period running from the time defendant can first ascertain that a party has been fraudulently joined).  This reasoning has been applied by one court to prevent a defendant from testing the merits of its claims in state court before removing:

> Either the complaint states a claim cognizable against the purported sham defendant or it does not.  It is not necessary to wait until the fraudulently joined defendant has tested the claims against it in state court and succeeded in defeating them on a motion to dismiss or demurrer . . . .  Defendants did not need to wait for the state court's ruling in order to remove the case, but could have filed a notice of removal alleging that [a defendant] was fraudulently joined at any point and without the consent of [that defendant].

*Simpson v. Union Pac. R. Co.*, 282 F Supp2d 1151, 1157-58 (ND Cal 2003).[4]

That is no different than the situation here where Mayer Brown could and should have fully appreciated its real party in interest argument as a basis for diversity jurisdiction at the outset of this litigation.  There has been no sea change since Mayer Brown was first served in the state court case.  There is simply no room for the argument that Mayer Brown could only "first ascertain" that this case was removable when the state court issued its order dismissing the claims of all parties other than Dulcich.

///

---

[4] Mayer Brown cites an unpublished Ninth Circuit opinion to the contrary. However, Ninth Circuit Rule 36-3(c) bars citation of that opinion, and opinions subsequently published by district courts in the Ninth Circuit hold to the contrary. *Knutson v. Allis-Chalmers Corp.*, 358 F Supp2d 983, 996-97 (D Nev 2005); *Simpson*, 282 F Supp2d at 1157-58.

Then, as now, Mayer Brown had all the information it needed to argue that Dulcich and the 52 corporate entities related to PSG were not real parties in interest because PSG alone signed the engagement letter taking responsibility for the fees now at issue. Unlike cases where the defendant learns something through a later-filed document or during the course of discovery, this case involves no new information gleaned during the course of the litigation from which it could first be ascertained that the case was removable. Nor does this case involve a situation where Mayer Brown was unaware of the citizenship of critical parties or missing critical factual information which necessitated even minimal further investigation in order to appreciate its ability to file a notice of removal. Mayer Brown knew the corporate citizenship of the plaintiffs by virtue of its involvement in the *Whaley* litigation.

In sum, prior to being served in this case, Mayer Brown knew that PSG was the only entity that contractually obligated itself to pay fees to Mayer Brown to defend the *Whaley* litigation. Based solely on the engagement letter, Mayer Brown contends that plaintiffs other than PSG – and in particular, the two California corporate plaintiffs which destroy diversity jurisdiction (Pacific Fresh Sea Food Company and Seacliff Seafoods, Inc.) – are not real parties in interest in this litigation. Because the engagement letter was known to Mayer Brown at the time it was served, the Amended Complaint was removable on June 22, 2012, on the basis that the extraneous plaintiffs were (and are) not real parties in interest to this litigation. Mayer Brown's failure to file a notice of removal premised upon its real parties in interest argument within 30 days of that date is fatal to removal under 28 USC § 1446(b).

///

///

///

15 – FINDINGS AND RECOMMENDATIONS

## IV. Unresolved Issues

This court need not – and does not – resolve the remaining issues raised by the parties in connection with the motion to remand. However, it bears noting that, even were the timeliness issue resolved in Mayer Brown's favor, at least two other potentially insurmountable issues stand between Mayer Brown and the doors to federal court. First, there is authority – now adopted by the United States District Court for the District of Columbia in the case removed there by PSG – that Mayer Brown's "stateless" partners preclude the exercise of diversity jurisdiction in any event. *See Mayer Brown LLP v. Dulcich, Inc. dba Pacific Seafood Group*, United States District Court for the District of Columbia, Civil No. 12-1318 (RWR), Memorandum Opinion and Order (docket #30).

Second, even assuming Meyer Brown's Notice of Removal was timely and that the "stateless" partners did not preclude diversity jurisdiction, Mayer Brown would still have to: (1) prove that the fraudulent joinder doctrine applies to the citizenship of a collusively-joined plaintiff (as opposed to a collusively-joined defendant), *see Lighting Sci. Grp. Corp. v. Koninklijke Phillips Elecs, NV*, 624 F Supp2d 1174, 1183 (ED Cal 2008) (noting that "few courts appear to have addressed the application of the fraudulent joinder rule to allegedly improper plaintiffs" and citing an unpublished Ninth Circuit opinion which "assumed without deciding that fraudulent joinder doctrine applies to plaintiffs as well as defendants"); and (2) prove by "clear and convincing evidence that no cause of action" could be stated against the allegedly fraudulently joined parties such that their presence could therefore be ignored. *Richey*, 139 F3d at 1318-19; *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F3d 1203, 1206 (9th Cir 2007). It is undisputed that the legal services Mayer Brown provided were, at least in part, for the benefit of the 52 related entities. At the hearing on the pending motions, Mayer Brown conceded that

there is a "hypothetical, contingent possibility" that a *quantum meruit* claim might be raised against the related entities if the contract-based claim were for some reason not available against PSG. Although carefully couched by Meyer Brown in minimizing adjectives, the possibility of such a claim (buttressed somewhat by the allegation of a *quantum meruit* claim by Mayer Brown in the Washington, DC, case; *see* Wray Decl., Ex. 7, p. 34) militates against a finding that Mayer Brown could state no cause of action against the related entities and, therefore, against the conclusion that they have no legitimate place as named plaintiffs in this declaratory judgment action.

Mayer Brown has also filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction (docket #22) contending that the claims for professional negligence and declaratory relief alleged in the Second Amended Complaint by the extraneous plaintiffs are not ripe. The thrust of this motion is that neither Mayer Brown nor the consultants they hired to defend plaintiffs in the *Whaley* litigation (Cornerstone Research Inc. and Stroz Friedberg) seek payment of fees from anyone other than PSG. Given this court's conclusion that Mayer Brown did not timely remove this case from state court, it need not and does not reach this contention and recommends that this motion to dismiss be stricken as moot.

Finally, Mayer Brown has also filed a Motion to Change or Transfer Venue (docket #6), seeking to have this case transferred to the United States District Court for the District of Columbia. As noted above, the Washington, DC, case was recently remanded to the Superior Court for the District of Columbia. Under 28 USC § 1404(a), a case may be transferred to "any other district or division where it might have been brought." In its order of remand, the United States District Court for the District of Columbia concluded that subject matter jurisdiction was lacking due to Mayer Brown's "stateless" partners. Removal in this district was untimely, and –

following the holding of the opinion in the Washington, DC, case – the United States District Court for the District of Columbia is not a district where this case might have been brought. Thus, the issue raised in the motion to change or transfer venue is also moot.

## RECOMMENDATIONS

For the reasons stated above, Plaintiffs' Motion to Remand (docket #4) should be GRANTED, and this case should be remanded to the Clackamas County Circuit Court of the State of Oregon, Case No. CV12020221.  In addition, defendant's Motion to Dismiss (docket #22) and Motion to Change or Transfer Venue (docket #6) should be STRICKEN as MOOT.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge.  Objections, if any, are due Friday, April 05, 2013.  If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

DATED  March 19, 2013.

                                                        s/ Janice M. Stewart
                                                            Janice M. Stewart
                                                            United States Magistrate Judge